**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **3 DIMENSIONAL WEALTH ADVISORY, LLC, et al.** | * | |
| | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **CIVIL NO. JKB-26-4297** |
| **SHAWN T. BARBERIS** | * | |
| **Defendant.** | * | |

* * * * * * * * * * * *

**MEMORANDUM AND ORDER**

Pending is Plaintiffs 3 Dimensional Wealth Advisory, LLC and Breit Purpose Legacy Consulting, LLC's Motion for a Temporary Restraining Order and Preliminary Injunction. (ECF No. 2.) Plaintiffs filed their Motion on October 14, 2026, and Defendant Shawn T. Barberis responded. (ECF Nos. 1, 5.) The Court convened a hearing the following day at which counsel appeared. (ECF No. 3.) For the following reasons as well as those stated in open court, Plaintiffs' Motion (ECF No. 2) will be denied without prejudice as to reconsideration.

Plaintiffs are the majority shareholders of Aspida, a wealth management advisory company. (ECF No. 1 ¶¶ 35, 127.) Defendant is the "founding shareholder" of Aspida but owns a minority of its shares. (*Id.* at ¶ 35; ECF No. 2-5 at 1.) Over the summer of 2026, the business relationship between the three parties rapidly deteriorated. (ECF No. 1 ¶ 49–67, 97–120.) As Plaintiffs allege in their Complaint, the situation devolved to the point that they terminated Barberis, but not before he undertook a series of destructive actions intended to "burn . . . down" the business and harm Plaintiffs. (*Id.* at ¶ 64–67, 125–29, 158.) Barberis' alleged ruinous behavior included: illegally rewriting Aspida's bylaws to grant himself more power and terminate the

Plaintiffs as principals (*id.* at ¶¶ 138–145); entering into a contract with an outside company that compelled Plaintiffs to transfer their shares, without obtaining any required approvals (*id.* at ¶¶ 146–47); and stealing Aspida's proprietary data and customer lists for use in a new competing corporate entity. (*Id.* at ¶¶ 156–59). Plaintiffs bring claims for breach of contract, tortious interference with contractual / business relations, misappropriation of trade secrets, breach of fiduciary duties, and for other equitable relief. (*Id.* at ¶ 160–206.)

Plaintiffs now ask the Court to issue a temporary restraining order ("TRO") to return the parties to the "state of affairs as it existed before Barberis embarked on his destructive course of contact." (ECF No. 2-2 at 17.) To obtain a TRO, the Plaintiffs must establish that [1] they are likely to succeed on the merits, [2] they are likely to suffer irreparable harm in the absence of preliminary relief, [3] the balance of equities tips in their favor, and [4] an injunction is in the public interest. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Because a TRO is "an extraordinary remedy," it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. The Plaintiffs are not yet entitled to such a remedy, primarily because they have not sufficiently shown that they are likely to suffer irreparable harm without it.

To meet the first requirement, Plaintiffs must do more than simply present a "grave or serious question for litigation," they must "clearly demonstrate that [they] will *likely succeed* on the merits." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009) (emphasis original). The Court's review of the relevant shareholder agreement (ECF No. 2-5) demonstrates that Plaintiffs are unlikely to meet their burden as to their claims regarding Barberis' allegedly unlawful transfer of shares, at least on the record currently before the Court. This contractual issue is murky at best. Plaintiffs argue that provisions 7.1.2 and 7.2 of the agreement forbid Barberis from transferring his shares without shareholder approval. (ECF No. 2

at 20.) Yet Barberis retorts that provision 5.2 of the agreement controls, granting him the unalloyed right to transfer shares as the "founding shareholder." (ECF No. 5 at 6–8.) The contractual language is ambiguous. "Such ambiguity is simply insufficient to support a finding that success on the merits is 'likely' rather than merely 'possible' and is fatal to Plaintiffs' motion for preliminary injunction." *Di Biase v. SPX Corp.*, 872 F.3d 224, 235 (4th Cir. 2017).

Plaintiffs' largely undisputed claims regarding Barberis' alleged misappropriation of trade secrets and enactment of unlawful bylaw provisions fare better. (ECF No. 2 at 18, 24.) Maryland law is clear that a customer list is a trade secret, the taking of which for competitive purposes is unlawful. *See ClearOneAdvantage, LLC v. Kersen*, 710 F. Supp. 3d 425, 436 (D. Md. 2024). And Maryland by default confers the post-organization power to create corporate bylaws on the shareholders, not the directors. Md. Code Ann., Corps. & Ass'ns § 2-109. Plaintiffs may be likely to succeed on the merits of these claims, but—as discussed below—they have not sufficiently shown irreparable injury.

To meet the second requirement to obtain a TRO, plaintiffs must show that they are suffering actual and imminent harm that cannot be remedied by the "final judgment after trial." *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 (4th Cir. 2019). Irreparable harm "is suffered when monetary damages are difficult to ascertain or are inadequate." *Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994) (citation omitted). Irreparable harm cannot be presumed from likelihood on the merits but must be independently established. *Bethesda Softworks, L.L.C. v. Interplay Ent. Corp.*, 452 F. App'x 351, 355 (4th Cir. 2011). Plaintiffs have not carried their burden because they have not explained why their alleged injuries cannot be or should not be remedied by monetary damages after trial.

For example, Plaintiffs argue that their potential loss of customer goodwill "def[ies] any quantification of money damages." (ECF No. 2-2 at 26.) Indeed, the Fourth Circuit has found that the loss of goodwill can be irreparable, for example where a business will be forced to breach its many customer contracts. *Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, 131 F.4th 205, 239 (4th Cir. 2025). But Plaintiffs do not plead with enough specificity how they will lose the "trust and confidence" of their clients, and why the court cannot calculate the value of that loss with any certainty. (*See* ECF No. 2-2 at 27.) Nor do Plaintiff explain why, as they allege, the loss of some goodwill would render their shares entirely "worthless." (*Id.*) Only where a plaintiff adequately alleges that goodwill is impossible to ascertain with accuracy can a court accept its loss as irreparable. *See Multi-Channel TV Cable*, 22 F.3d at 552 (finding the *permanent* loss of customer trust to be irreparable); *see also Choreo, LLC v. Lors*, 164 F.4th 667, 672 (8th Cir. 2026) (rejecting the argument that an "amorphous loss of goodwill and reputation was irreparable").

As for Plaintiffs' arguments regarding the alleged breach of contract; part of this claim is, at bottom, a claim for the difference between one monetary sum and another. *See Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 695 (4th Cir. 1994) ("[T]he district court must consider the close relationship of [a plaintiff's] claimed harm to an ordinary claim for money damages.") To the extent that dilution in their shares and loss of their alleged right of first refusal leaves Plaintiffs without control over Aspida, such injuries *may* be irreparable. *See Oracle Real Est. Holdings I LLC v. Adrian Holdings Co. I, LLC,* 582 F. Supp. 2d 616, 626 (S.D.N.Y. 2008) (finding the loss of a bargained-for-right and the loss of corporate control to be an irreparable injury). But it is unclear from the briefings how much control Plaintiffs had over Aspida, both before and after Barberis' alleged actions. For Plaintiffs to make an adequate showing, they must

show that their harm is actual, imminent, and incalculable. *Real Time*, 131 F.4th at 239. They have not yet convinced the Court that simple legal damages would not suffice as a remedy.

In short, the Plaintiffs have not shown that they are entitled to preliminary relief at this time. They may have come close on their trade secret misappropriation claim. But the Court finds that a TRO is not yet appropriate, especially considering the parties' willingness during the hearing to meet independently and sort out the dispute. *See Bethesda Softworks, L.L.C. v. Interplay Ent. Corp.*, 452 F. App'x at 353 ("[W]hether to grant the injunction still remains in the 'equitable discretion' of the [district] court" even when a plaintiff has made the requisite showing.") (quoting *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007)).

The Court acknowledges that there are complex issues in this case that both parties wish to urgently resolve. But a TRO is an extraordinary remedy that a Court cannot grant merely to start sorting through the brambles of a complex case. Rather, the Court can grant preliminary relief only if a party clearly demonstrates the *Winter* factors, including their likelihood of success and the irreparable nature of their injuries. If the parties cannot settle their differences, Plaintiffs may have another opportunity to present more concise and pointed briefing to prove their case.

Accordingly, it is ORDERED that Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction (ECF No. 2) is DENIED without prejudice to its renewal at a later date.

DATED this 15 day of October, 2026.

BY THE COURT:

James K. Bredar

James K. Bredar
United States District Judge