**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **3 DIMENSIONAL WEALTH ADVISORY, LLC, et al.** | * | |
| | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **CIVIL NO. JKB-26-4297** |
| **SHAWN T. BARBERIS** | * | |
| **Defendant.** | * | |

* * * * * * * * * * * *

**MEMORANDUM AND ORDER**

Pending is Plaintiffs 3 Dimensional Wealth Advisory, LLC and Breit Purpose Legacy Consulting, LLC's Second Motion for a Temporary Restraining Order and Preliminary Injunction. (ECF No. 14.) The Court convened a hearing on October 29, 2026, at which counsel appeared both in-person and remotely. (ECF No. 25.) For the following reasons, Plaintiffs' Motion (ECF No. 14) will be denied without prejudice.

This is Plaintiffs' second motion for a temporary restraining order ("TRO") on substantially the same set of facts. (*See* ECF Nos. 2, 11.) Plaintiffs are the majority shareholders of Aspida, a wealth management advisory company. (ECF No. 1 at ¶¶ 35, 127.) Defendant Shawn T. Barberis is the "founding shareholder" of Aspida. (*Id.* at ¶ 35.) Aspida itself is not a party to the case. This TRO request accompanies a sprawling Complaint in which Plaintiffs allege that Barberis, following an acrimonious breakdown of the parties' relationship, attempted to sell Aspida out from under Plaintiffs after sabotaging the company's corporate structure and plundering its intellectual property for use in a competing venture. (*See id.* at ¶¶ 125–59.) The Plaintiffs brought various claims against Barberis, many arising out of his alleged violations of the

terms of an unusually complicated Shareholders' Agreement executed between the parties in 2018. (*See* ECF No. 2-5.)

The Court denied Plaintiffs' first TRO because it found that they had not made the required showing under the four factors set out in *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). (ECF No. 11 at 2–5.) Those factors require the Plaintiffs to establish that [1] they are likely to succeed on the merits, [2] they are likely to suffer irreparable harm absent preliminary relief, [3] the balance of equities tips in their favor, and [4] an injunction is in the public interest. *Winter*, 555 U.S. at 20. The Court expressed doubt as to whether Plaintiffs satisfied the first two factors. (ECF No. 11 at 2–3, 5.) It found that Plaintiffs had not shown a likelihood of success on the merits of their claims based on the disputed terms in the complex Shareholders' Agreement. (*Id.* at 2–3.) And the Court found that Plaintiffs did not show that their harms were "actual, imminent, and incalculable." (*Id.* at 5.) The Court noted, however, that Plaintiffs "may have come close" to success on their trade secret claims and invited "more concise and pointed briefing" on that issue, should the parties not resolve their differences. (*Id.* at 3–5.)

The Plaintiffs' briefing related to their trade secret claims is materially stronger in their second TRO motion. Plaintiffs focus their Motion on the specific allegations that Barberis is "(1) stealing Aspida's clients and diverting them to a competing company (Filos360), and (2) copying Aspida's technology to enhance Filos360's technology." (ECF No. 14-2 at 1.) To bolster their case, they identify five types of trade secrets that Barberis allegedly pilfered: Aspida's domain names; an AI tool; a contact list of about 20,000 entries; a Master Client List; and "Family Files" containing client contact information. (*Id.* at 2.) And they cite the measures Aspida takes to protect that information including password protection, employee NDAs, SSL certificates, and an in-progress SOC-2 certification. (*Id.* at 3–4.)

Plaintiffs also allege with specificity the exact acts of misappropriation they ask the Court to enjoin, and why those acts will inflict irreparable injury. They allege that Barberis changed Aspida's GoDaddy passwords, giving himself exclusive control over Aspida's domains and the power to cancel them at any time. (ECF No. 1 at ¶ 102; ECF No. 14-2 at 4.) They allege that Barberis, while still an employee, exported the Master Client List to his personal Gmail account, giving him continuing free use of that information. (ECF No. 1 at ¶¶ 156–57; ECF No. 14-2 at 4.) And they allege that Barberis is building a platform that copies Aspida's code and language (Filos360), risking the permanent diversion of existing Aspida clients. (ECF No. 14-2 at 4–5.)

To prevail on their renewed motion, Plaintiffs must first "clearly demonstrate that [they] will *likely succeed* on the merits," not merely raise a "grave or serious *question* for litigation." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009) (emphasis original). "A plaintiff need not establish a 'certainty of success,' but must make a clear showing that he is likely to succeed at trial." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). Where there is uncertainty as to whether the facts in a case will entitle the plaintiff to a victory, that "ambiguity" is "simply insufficient to support a finding that success on the merits is 'likely' rather than merely 'possible' and is fatal" to a motion for preliminary relief. *Id.* at 235.

Barberis attempts to inject that fatal ambiguity into Plaintiffs' case. He argues that Plaintiffs are unlikely to succeed on their trade secret claims because they are "not the proper parties" to bring them. (ECF No. 23 at 2.) In his view, the claims rest on "allegations regarding the property of Aspida, not the property of the individual shareholders," and are therefore "properly assertable by Aspida alone, unless a shareholder derivative suit . . . is brought." (*Id.* at 3.)

At the hearing, Plaintiffs' counsel confirmed that Plaintiffs do not sue derivatively on Aspida's behalf, but for direct harm to themselves as shareholders. (ECF No. 25.) Counsel relied

on *Oliveira v. Sugarman*, 152 A.3d 728, 749 (Md. 2017), for the proposition that shareholders under Maryland law may bring direct claims when they are distinctly harmed, including through dilution of their shares. *See id.* at 749 ("We agree that share dilution in some circumstances can support a direct claim.") Barberis' counsel, however, argued that *Oliveira* cuts the other way: to assert a direct claim under Maryland law, a shareholder must show that they have "suffered an injury distinct from [that suffered by] the corporation," and any harm stemming from Barberis' alleged acts of misappropriation are the same for Aspida and its shareholders. *Id.* at 742.

The Court need not resolve which reading controls here. It is enough that the question is genuinely open, and that Plaintiffs have not convinced the Court—at this stage—that their interpretation of *Oliveira* is correct. Count V of Plaintiffs' Complaint alleges misappropriation of trade secrets that Plaintiffs themselves describe as Aspida's, and it seeks to recover for the resulting reduction in the value of Plaintiffs' shares.[1] (ECF No. 1 at ¶¶ 192–93; ECF No. 14-2 at 1–2.) Whether that injury is distinct from Aspida's own, and therefore whether Plaintiffs may assert these claims at all, cannot be determined on the present record. *See Oliveira*, 152 A.3d at 749–50 ("We do not know by how much Petitioners' shares were allegedly diluted, what effect that dilution had on Petitioners' voting power, if any, or what financial loss they might have suffered due to such dilution.")

This uncertainty is fatal to the extraordinary relief that Plaintiffs seek. The result here is the same regardless of whether the question of derivative versus direct injuries relates to standing

[1] To the extent Plaintiffs instead rely on the confidentiality and non-solicitation provisions of the 2018 Shareholders' Agreement for their misappropriation claims, that route is no clearer. The Court previously found the Agreement's terms ambiguous. (ECF No. 11 at 3). And whether the Agreement remains in effect at all is disputed, with both parties shifting positions as their arguments require. Plaintiffs ask the Court to declare the Agreement terminated, (ECF No. 1 ¶ 170(c)), yet they invoke its §§ 8 and 13 (ECF No. 14-2 at 7–8, 15). Barberis now argues that the Agreement is terminated, (ECF No. 23 at 3 n.4, 7), yet he previously relied on its § 5.2 transfer rights in his attempt to sell the parties' shares of Aspida (ECF No. 5 at 6–8). Neither party addresses whether the relevant provisions survive termination. That uncertainty, like the ambiguity in the Agreement's terms, precludes a finding that Plaintiffs are likely to succeed on a breach of contract theory. *See Di Biase*, 872 F.3d at 235.

or relates to the merits. *See Potter v. Cozen & O'Connor*, 46 F.4th 148, 157 (3d Cir. 2022) (explaining that questions of derivative harm to shareholders relates to prudential standing); *Smiley v. Bhatnagar*, No. 21-2172, 2023 WL 2966036, at *2 (4th Cir. Apr. 17, 2023) (reviewing a dismissal for lack of "shareholder standing" under the Rule 12(b)(6) standard). Either way, Plaintiffs have not met their burden. *See Am. Fed'n of Tchrs. v. Bessent*, 152 F.4th 162, 169 n.3 (4th Cir. 2025) ("[T]he 'likelihood of success on the merits' refers to the party's likelihood of success *in the lawsuit before the court*, including both merits and jurisdictional issues."), *abrogated in part on other grounds by Am. Fed'n of State, Cnty. & Mun. Emps. v. Soc. Sec. Admin.*, No. 25-1411 (4th Cir. Apr. 10, 2026) (en banc).

Accordingly, the Court finds itself in a position like the one it faced on Plaintiffs' first motion, when ambiguity in the Shareholders' Agreement prevented a finding of likely success. (ECF No. 11 at 3.) Plaintiffs narrowed their request to the trade secret claims but now face a different threshold question: whether they or Aspida are the proper parties to assert them. That question may be resolved in Plaintiffs' favor or may be cured by amendment. But, for now, Plaintiffs' likelihood of success is a close call, and "close calls typically do not compel a preliminary injunction." *Willey v. Brown*, Civ. No. BAH-23-2299, 2024 WL 3557937, at *11 (D. Md. July 25, 2024).

Plaintiffs have not made the required showing under the first *Winter* factor, so the Court need not reach the others. *See Frazier v. Prince George's Cnty.*, 86 F.4th 537, 544 (4th Cir. 2023) ("[D]enying a preliminary injunction only takes the rejection of a single factor." (emphasis omitted).) The Court, however, emphasizes the limited nature of its order. A party that prevails in a TRO motion "has achieved only temporary success at an intermediary stage of the suit." *Lackey v. Stinnie*, 604 U.S. 192, 201 (2025) (internal quotation marks, alterations, citations

omitted). Courts must avoid "improperly equating 'likelihood of success' with 'success'" and thus treating preliminary rulings as "tantamount to decisions on the underlying merits." *Id.* (quoting *University of Tex. v. Camenisch*, 451 U.S. 390, 394–95 (1981)). That proposition holds equally true where the Court denies a TRO—it would be a mistake for a defendant to conclude that, just because they have avoided a TRO, they have achieved a victory of any significance in the fuller context of their case. Here, Plaintiffs have made a substantial showing that Barberis took and is using Aspida's client information, and that may well prove problematic for Barberis in the longer term.

The Court does not now decide whether misappropriation occurred, or whether Plaintiffs may ultimately assert these claims. It finds only that, while the threshold question of whether Plaintiffs are the proper parties remains unresolved, they have not met the high bar of likely success on the merits. The Court does not foreclose the possibility that yet another motion for preliminary relief may be appropriate later in this case or on the allegations of an amended complaint.

Accordingly, it is ORDERED that Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction (ECF No. 14) is DENIED without prejudice.

DATED this 30th day of October, 2026.

BY THE COURT:

/s/ JAMES K BREDAR
James K. Bredar
United States District Judge